


POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 13-16171-B-7
)
Frances Elizabeth Pass, ) DC No. TGM-2
)
         Debtor. )
_____ )

## MEMORANDUM DECISION REGARDING OBJECTION TO AMENDED HOMESTEAD EXEMPTION

Trudi G. Manfredo, Esq., of The Law Office of Trudi G. Manfredo, appeared on behalf of the chapter 7 trustee, James E. Salven.

Peter L. Fear, Esq., of the Fear Law Group, P.C., appeared on behalf of the debtor, Frances Elizabeth Pass.

Before the court is an objection filed by the chapter 7 trustee, James E. Salven (the "Trustee") to the amended homestead exemption claimed by the debtor, Frances Elizabeth Pass (the "Debtor"). The Trustee contends that the Debtor did not actually reside in the subject property on the day the bankruptcy was filed (the "Objection"). The matter was tried before the court. The only two witnesses, the Debtor and her ex-husband, gave antithetical testimony regarding the only disputed issue. For the reasons set forth below, the Objection will be overruled and the amended homestead exemption will be allowed.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 522[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(B).

**BACKGROUND AND FINDINGS OF FACT.**

Most of the relevant facts in this contested matter are undisputed. The parties agreed to the background facts on the record at the beginning of the hearing and they need not be fully revisited here. It is sufficient to summarize the situation as follows: The Debtor and her ex-husband, Aladino Joseph Galli ("Galli"), filed a joint petition under chapter 13 at 3:22 p.m. on December 30, 2009 (Case No. 09-62714-B-13: the "Chapter 13 Petition"). They actually met with their attorney and signed the Chapter 13 Petition two days earlier. The Petition listed two parcels of property which are at issue here. The first property located on Manila Avenue in Fresno, California, was listed on the Chapter 13 Petition as the street address for both the Debtor and Galli. It was also listed on Schedule A as Galli's residence (the "Fresno House"). Schedule C listed the Fresno House as the joint debtors' "homestead" using Cal. Code Civ. P. ("CCP") § 703.140. It was later amended to use CCP § 704.730. The second property located on Fresno Street, in Coalinga, California, was listed on Schedule A as the Debtor's residence ("Coalinga" or the "Coalinga House"). The Debtor had been working in Madera, California, for Pacific Gas & Electric Company and had recently accepted an offer to transfer to PG&E's Coalinga office. The Debtor had purchased the Coalinga House and began refurbishing it in September 2009.

At the time the petition was filed, both the Debtor and Galli had decided to terminate their marriage and the Debtor had been working diligently to repair and furnish the Coalinga House with the intention of moving there and making it her permanent residence. After the Debtor purchased the Coalinga House, her brother made two extended trips from Illinois to help with the repair work. He returned to Illinois on December 29, 2009, the day before the Petition was filed. On at least one occasion, Galli even assisted the effort, helping to remove floors and pressure wash the exterior. There is no dispute the Debtor had physically moved to Coalinga by January 1, 2010. However, the new furniture was delivered to the Coalinga House on December 29, 2009. The

Debtor had been moving her clothing and personal effects to Coalinga since November and the Coalinga House was ready for occupancy several days before January 1. The Debtor contends that she left the Fresno House with no intention of returning to reside there on December 30, the morning the Petition was actually filed.

The Chapter 13 Petition did not go well and in September 2013, the Debtor petitioned the court to split the case and convert her half of the case to chapter 7. That order was entered on September 16 and the Debtor's case was assigned the above-referenced number.[2] At the same time, the Debtor filed amended schedules claiming a homestead exemption for her interest in the Coalinga House using CCP § 704.030. The Trustee filed a timely objection to the amended exemption.

## ISSUES PRESENTED.

At the close of the evidentiary hearing, the parties agreed that there is only one disputed factual issue: did the Debtor actually reside in the Coalinga House at the time the petition was filed? If the Debtor is to be believed, she left the Fresno House with no intention of returning and became a "resident" of Coalinga before the court opened on the morning of the day the Petition was filed. If Galli is to be believed, that event did not occur until two days after the petition was filed.

## ANALYSIS AND CONCLUSIONS OF LAW.

**Applicable Law.** It is well accepted in the Ninth Circuit that an exemption claim is presumptively valid. *Carter v. Anderson (In re Carter),* 182 F.3d 1027, 1029-30, n.3 (9th Cir. 1999). Once the exemption has been claimed, "the objecting party has the burden of proving that the exemptions are not properly claimed." Rule 4003(c); *Gonzalez v. Davis (In re Davis)*, 323 B.R. 732, 736 (9th Cir. BAP 2005) (Klein, J., concurring). Even if the presumption is rebutted with evidence from the objecting party, forcing the

---

[2]Galli remained the debtor in the original chapter 13 case until it was dismissed on October 12, 2013. Galli still resides in the Fresno House and the Trustee has filed an adversary proceeding against Galli (No 14-1056) seeking, *inter alia*, to sell the Fresno House and recover the Debtor's interest therein for the benefit of creditors.

debtor to come forward with unequivocal evidence to support the exemption, "[t]he burden of persuasion, however, always remains with the objecting party." *Carter*, 182 F.3d at 1029 n.3.

The debtor's exemption rights under state law are determined as of the date of the petition. *Moffat v. Habberbush (In re Moffat)*, 119 B.R. 201, 204, n.3 (9th Cir. BAP 1990). Here, the Debtor's case was converted to chapter 7 and assigned a new case number in September 2013. However, conversion of the case to another chapter does not change the original "date of the filing of the petition, the commencement of the case, or the order for relief." § 348(a). Therefore, the relevant date for determining the Debtor's homestead exemption is December 30, 2009.

When the debtor is claiming an exemption under state law, then the bankruptcy court must look to applicable state law to determine the scope of the exemption. *Sylvester v. Hafif (In re Sylvester)*, 220 B.R. 89, 91 (9th Cir. BAP 1998), citing *In re Golden*, 789 F.2d 698, 700 (9th Cir. 1986). Under the Bankruptcy Code and applicable California law, exemptions are to be broadly and liberally construed in favor of the debtor. *In re Gardiner*, 332 B.R. 891, 894 (Bankr. S.D. Cal. 2005).

The Debtor has a claimed homestead exemption under CCP § 704.730. For purposes of that statute, the term "homestead" is defined in CCP § 704.710 as follows:

> § 704.710 "Dwelling," "Family Unit," "Homestead," and "Spouse" Defined.
>
> (c) "Homestead" means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse *resided on the date the judgment creditor's lien attached to the dwelling*, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead. (Emphasis added.)

Under California law, the debtor and his or her spouse may own more than one dwelling that satisfies the statutory definition of a "homestead." However, if the judgement debtor and spouse of the judgment debtor reside in separate homesteads, only the homestead of one of the spouses may be exempt. CCP § 704.720(c).

///

The court is essentially being asked to weigh two conflicting sets of testimony and evidence and decide which is the most believable. As the trier of fact, the bankruptcy court is entitled to evaluate a witness's credibility and to determine whether to believe the testimony or not. *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 731 (9th Cir. BAP 1999), *aff'd mem.* 5 F. App'x 743 (9th Cir. 2001). "When the testimony of a witness is not believed, [the bankruptcy court, as] the trier of fact[,] may simply disregard it." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984).

**Application to the Facts.** The Debtor testified that she awoke early on the morning of December 30, 2009, put a few personal belongings in the car such as pet supplies, and was at her place of work in Coalinga by 8:00 a.m. Her clothing had already been moved to Coalinga and the Coalinga House was fully furnished. At the end of the day, she called Galli and told him she was going to stay in Coalinga and would not return to the Fresno House. The sole reason for purchasing the Coalinga House and performing the extensive restoration effort was to facilitate her planned separation and imminent divorce from Galli.

Conversely, Galli testified that he and the Debtor rode together in a truck to deliver some furniture to the Coalinga House on January 1, 2010. He told her during that conversation that he wanted her to leave for six months because he needed some "personal time." He testified that the Debtor did not actually leave the Fresno House until between 4:00 and 5:00 p.m. after they returned from that trip. According to Galli, the Debtor was "shocked" when he asked her to leave the Fresno House during the trip on January 1. Shocked? The court finds this statement difficult to believe. Why would the Debtor be shocked at the revelation that Galli wanted her to move out of the Fresno House? She had been planning to do exactly that for several months. By then, the marriage was so strained that they were physically occupying separate areas of the Fresno House. The Debtor had purchased the Coalinga House over three months earlier in anticipation that she would be leaving the Fresno House permanently. After the Coalinga escrow closed, the Debtor had commissioned significant repairs to the Coalinga House,

some of which were performed by Galli. They both signed the Chapter 13 Petition and schedules disclosing that the Coalinga House was the Debtor's residence.

By December 30, all the *indicia* of permanent residency were in place. The Debtor had an account and was paying the City of Coalinga for utilities. The Debtor had already notified her employer, PG&E, to shift her "employee" utility discount to Coalinga. The Debtor had purchased a substantial amount of new furniture and other items she would need to live in Coalinga. The furniture was delivered and the Coalinga House was essentially ready for comfortable occupancy on December 29. Under these circumstances, why would the Debtor continue to commute back to Fresno and why would Galli have to ask her to leave? After considering all of the testimony and demeanor of the witnesses, the court finds the Debtor's testimony more persuasive and more consistent with the rest of the evidence. Galli's testimony was insufficient to rebut the presumption of validity that attaches to the Debtor's homestead exemption.

**CONCLUSION.**

Based on the foregoing, the court finds and concludes that the Debtor left the Fresno House on the morning of December 30, 2009, before the court opened and before the Chapter 13 Petition was filed. The Debtor left with the intention of making Coalinga her permanent residence and did in fact commence occupancy of the Coalinga House the same day. Accordingly, the Coalinga House was the Debtor's homestead at the commencement of this bankruptcy case and the Trustee's Objection will be overruled.

Dated: November __3__, 2014

W. Richard Lee
United States Bankruptcy Judge

**Instructions to Clerk of Court**
Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and  X   Other Persons Specified Below:

Trudi G. Manfredo, Esq.
Attorney at Law
575 E. Alluvial, #103-A
Fresno, CA 93720

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721